**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
CLEOTILDE ROCK and TRACY CLAXTON,            :
individually and on behalf of the class and  :
subclass defined herein,                     :
                                             :
                    Plaintiffs,              :
                                             :        10 CIV 03106 (CS)
          v.                                 :
                                             :
MOSS CODILIS, LLP, and AMERICAN              :
HOME MORTGAGE SERVICING, INC.,               :
                                             :
                    Defendants.              :
-----------------------------------------------------------------x
```

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**RULE 12(b)(6) MOTION TO DISMISS**

Abraham Kleinman
KLEINMAN, LLC
626 RexCorp Plaza
Uniondale, New York  11556-0626
(516) 522-2621
(888) 522-1692 (FAX)

Daniel A. Edelman
Cathleen M. Combs
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## <u>TABLE OF CONTENTS</u>

I.    DEFENDANTS VIOLATED THE FDCPA BY FAILING TO DISCLOSE THE
      IDENTITY OF THE CREDITOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.    The FDCPA requires disclosure of the person to whom the debt is owed  . . . . . . 1
      B.    The consumer is entitled to know who the debt collector's principal is  . . . . . . . . 3
      C.    The distinction between creditors and servicers is important  . . . . . . . . . . . . . . . 7
      D.    Defendants' arguments lack merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.   THE LIABILITY OF AHMSI IS NOT LIMITED TO 1% OF MOSS CODILIS' NET
      WORTH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Plaintiffs Cleotilde Rock and Tracy Claxton (collectively "Plaintiffs") filed the instant action asserting that Defendants Moss Codilis, LLP ("Moss Codilis") and American Home Mortgage Servicing, Inc. ("AHMSI"), violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692g by failing to disclose in its initial communication, or within five days of its initial communication, (1) the amount of the debt, and (2) the name of the creditor to whom the debt is owed.  Defendants have filed a motion to dismiss which attacks only Plaintiffs' claims that the letter failed to disclose the name of the creditor to whom the debt is owed.  Therefore, even if Defendants succeed on the current motion, which for all of the following reasons they should not, Plaintiffs' claims regarding the disclosure of the amount of the debt remain actionable.

Plaintiffs submit the following response in opposition to Defendants' motion to dismiss, in part, Plaintiffs' claims.

## I.  DEFENDANTS VIOLATED THE FDCPA BY FAILING TO DISCLOSE THE IDENTITY OF THE CREDITOR

15 U.S.C. §1692g(a)(2) requires that the "debt collector" disclose in its initial communication (or within 5 days thereafter) "the name of the creditor to whom the debt is owed."  This requires disclosure of the actual holder of the debt, not a collection agent or servicer.

### A.   The FDCPA requires disclosure of the person to whom the debt is owed

"Creditor" is defined in the FDCPA (15 U.S.C. §1692a(4) as a "person who offers or extends credit creating a debt or <u>to whom a debt is owed</u>, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."   (Emphasis added)

A "servicer" is not the person to whom the debt is owed, but simply a collection agent.  The term is commonly used in connection with mortgage loans; "servicer" is defined in the Real Estate Settlement Procedures Act 12 USC 2605(i)(2) ("RESPA"), as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also  services the loan)."  "Servicing" is defined in §2605(i)(3) as "receiving any

1

scheduled periodic  payments from a borrower pursuant to the terms of any loan . . . and making the payments of  principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."   RESPA thus distinguishes between the maker or holder of the loan and the person who collects and disburses payments on behalf of the maker or holder.  In the context of mortgages, "servicers" typically begin collecting loans when they are current.

There is also a "servicing exemption" in the definition of "debt collector" in the FDCPA, which defendants are not entitled to take advantage of because their involvement with the debt is entirely post-default.  The "servicing exemption" is in 15 U.S.C.§ 1692a(6)(F)(iii), and exempts "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . . "[1] The language of the exemption tracks the basic 1692a(6) definition of "debt collector," which is "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  It is evident from this formulation that a "servicer" is treated similarly to a debt collector, that a servicer is exempt only if it first became involved with the debt prior to default, that the "another" for whom the servicer is acting is the "creditor," and that even an exempt servicer is not that "another."

The requirement in §1692g(a)(2) that the "debt collector" disclose "the name of the creditor to whom the debt is owed" thus requires disclosure of the actual holder of the debt, not a collection agent or servicer.  If the debt has been assigned, the assignee is the current holder and is the party who must be disclosed.  *Chan v. North American Collectors*, 06-0016, 2006 U.S.Dist. LEXIS 13353 (N.D.Cal. March 24, 2006).

---

[1]  "The exception (iii) for debts not in default when obtained applies to parties such as mortgage service companies whose business is servicing current accounts."  FTC Official Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, at 50104 (Dec. 13, 1988).

**B.     The consumer is entitled to know who the debt collector's principal is**

The reason for this requirement is that there have long been widespread problems with consumers paying or settling debts with collection agents and then being subjected to collection activity or suit by others for the same debt.  The Federal Trade Commission recently found (Collecting Consumer Debts: The Challenges of Change, A Workshop Report, Feburary 2009 ["FTC Workshop Report"] (available at

http://www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf)  that debt buyers were filing tens of thousands of collection lawsuits in state courts without having the evidence necessary to prove them. FTC Workshop Report, pp. 55-57. Among the things which debt buyers have been unable to prove is that they actually own the debts sued upon.   For example, in *Nyankojo v. North Star Capital Acquisition*, 679 S.E.2d 57, 60-61 (2009), the court held:

> Through competent and admissible evidence, North Star showed nothing more than that, under a revolving charge agreement, Nyankojo was indebted in the amount of $2,621.83 on an account to Leather World identified by number; that Leather World assigned an unidentified revolving charge agreement to an unidentified entity; and that Wells Fargo assigned to North Star an unidentified account on which Nyankojo owed $1,132.62. This evidence, even together with the reasonable inferences from it, was insufficient to establish all essential elements of North Star's case.

Similarly, in *Rushmore Recoveries X, LLC v. Skolnick*, 2007 N.Y. Misc. LEXIS 3731, *3, 841 N.Y.S.2d 823 (Nassau Co. Dist. Ct. 2007), the court held that:

> [T]he documents upon which the Plaintiff relies do not support the Plaintiff's claim. While the Plaintiff alleges that it is the assignee of this account, the Plaintiff fails to provide proper proof of the alleged assignment sufficient to establish its standing herein. The Plaintiff has made no effort to authenticate the alleged assignments . . . and, there is a brake [sic]  in the chain of the assignments from Citibank down to the Plaintiff.

*See also Palisades Collection LLC v. Haque,* 2006 N.Y. Misc. LEXIS 4036; 235 N.Y.L.J. 71 (Civ. Ct. Queens Co., April 13, 2006); *Palisades Collection, LLC v. Gonzalez*,  10 Misc. 3d 1058A; 809 N.Y.S.2d 482 (Civ. Ct. N.Y. Co.  2005); *Unifund CCR Partners v. Hemm*, 08-CA-36, 2009 Ohio 3522; 2009 Ohio App. LEXIS 3009 (Ohio App., 2nd Dist., July 17, 2009)

(debt buyer could not prove that it owned alleged account); *Unifund CCR Partners v. Laco,* No. 05-08-01575-CV, 2009 Tex. App. LEXIS 9642, *12 (Tex. App. Dec. 17, 2009) ("We therefore conclude Unifund has failed to offer a scintilla of evidence that it is the assignee of a creditor 'to whom [Laco] incurred a debt,' and the trial court did not err in granting summary judgment in favor of Laco").

Moreover, in some cases, the problem is not merely that the debt buyer cannot prove it owns the debt; it does not in fact own the debt:

> More collection agencies are turning to the debt resale market as a place to pick up accounts to collect on. Too small to buy portfolios directly from major credit issuers, they look to the secondary market where portfolios are resold in smaller chunks that they can handle. But what they sometimes find in the secondary market are horror stories: The same portfolio is sold to multiple buyers; the seller doesn't actually own the portfolio put up for sale; half the accounts are out of statute; accounts are rife with erroneous information; access to documentation is limited or nonexistent.

Corinna C. Petry, *Do Your Homework; Dangers often lay hidden in secondary market debt portfolio offerings. Here are lessons from the market pros that novices can use to avoid nasty surprises,* Collections & Credit Risk, Mar. 2007, at 24.  Recently, a debt buyer was criminally convicted of a scheme to sell 86,000 accounts that he did not own; he had actually sold about 10,000 at the time he was caught. *United States v. Goldberg*, 09-80030-CR (S.D.Fla.), superseding indictment, April 30, 2009 (Dkt. #22), plea agreement and proffer, Aug. 14, 2009 (Dkt. #34), restitution stipulation, Jan. 22, 2010 (Dkt. #43), amended judgment, Jan. 25, 2010 (Dkt. #45).

As a result of lawsuits being filed by debt collectors who do not own the debts sued upon, a New York court with a large collection caseload recently noted:

> [O]n a regular basis this court encounters defendants being sued on the same debt by more than one creditor alleging they are the assignee of the original credit card obligation. Often these consumers have already entered into stipulations to pay off the outstanding balance due the credit card issuer and find themselves filing an order to show cause to vacate a default judgment from an unknown debt purchaser for the same obligation.

*Chase Bank USA, N.A. v. Cardello*, 896 N.Y.S.2d 856, 857 (Civ. Ct. Richmond Co. 2010).

4

Numerous other cases involve double payment or competing claims based on the same debts. *Smith v. Mallick,* 514 F.3d 48 (D.C.Cir. 2008) (commercial debt purchased and resold by debt buyer, debt buyer (possibly fraudulently) settles debt it no longer owns, settlement held binding because notice of assignment not given, but obligor subjected to litigation as result); *Miller v. Wolpoff & Abramson, LLP*, No. 1:06-CV-207-TS, 2008 U.S.Dist. LEXIS 12283 (N.D.Ind. Feb. 19, 2008) (debtor complained he had been sued twice on the same debt); *Dornhecker v. Ameritech Corp.,* 99 F.Supp.2d 918, 923 (N.D.Ill. 2000) (debtor claimed he settled with one agency and was then dunned by a second for the same debt); *Northwest Diversified, Inc. v. Desai,* 353 Ill.App.3d 378, 818 N.E.2d 753 (1st Dist. 2004) (commercial debtor paid the creditor only to be subjected to a levy by a purported debt buyer); *Wood v. M&J Recovery LLC,* No. CV 05-5564, 2007 U.S.Dist. LEXIS 24157 (E.D.N.Y. Apr. 2, 2007) (debtor complained of multiple collection efforts by various debt buyers and collectors on the same debt, and the defendants asserted claims against one another disputing the ownership of the portfolio involved); *David J. Gold, P.C. v. H&K Investigations, Inc.,* 2010 NY Slip Op 30538U, 2010 N.Y. Misc. LEXIS 2548 (N.Y. Co. Sup. Ct., March 11, 2010) (one debt collector sued another claiming that it had, without authority, assigned its account to a second debt collector who had misidentified the judgment creditor and inflated the judgment amount).

Foreclosure actions are no exception.  Recently, courts have dismissed numerous foreclosure and collection lawsuits that have been filed in the names of entities that do not own the purported debts. *In re Foreclosure Cases,* No. 1:07CV2282, 2007 U.S.Dist. LEXIS 84011 (N.D. Ohio Oct. 31, 2007) (15 foreclosure cases combined); *In re Foreclosure Cases,* No. 07-cv-166, 2007 U.S.Dist. LEXIS 90812 (S.D. Ohio Nov. 27, 2007) (19 foreclosure cases combined); *In re Foreclosure Cases,* 521 F.Supp.2d 650 (S.D. Ohio 2007); *In re Foreclosure Cases,* No. 07-cv-166, 2007 U.S.Dist. LEXIS 95673 (S.D. Ohio, Dec. 27, 2007) (15 foreclosure cases combined); *NovaStar Mortgage, Inc. v. Riley,* No. 3:07-CV-397, 2007 U.S.Dist. LEXIS 86216 (S.D. Ohio Nov. 21, 2007); *NovaStar Mortgage, Inc. v. Grooms,* No. 3:07-CV-395, 2007

5

U.S.Dist. LEXIS 86214 (S.D. Ohio Nov. 21, 2007); *HBC Bank USA v. Rayford,* No. 3:07-CV-428, 2007 U.S.Dist. LEXIS 86215 (S.D. Ohio Nov. 21, 2007); *Everhome Mortgage Co. v. Rowland,* 2008 Ohio 1282, 2008 Ohio App. LEXIS 1103 (2008) (judgment for plaintiff reversed because it failed to introduce assignment or establish that it was holder of note and mortgage); *HSBC Bank USA, N.A. v. Valentin,* 14 Misc.3d 1123A, 859 N.Y.S.2d 895 (2008); *HSBC Bank USA, N.A., v. Cherry,* 18 Misc.3d 1102A, 856 N.Y.S.2d 24 (2007).*See also*, *DLJ Mortgage Capital, Inc. v. Parsons,* 2008 Ohio 1177, 2008 Ohio App. LEXIS 990 (2008); *Washington Mutual Bank, F.A. v. Green,* 156 Ohio App.3d 461, 806 N.E.2d 604 (2004).

Deutsche Bank National Trust Company, the trustee for Plaintiff's debt in this action, has been the subject of some of these dismissals. *Deutsche Bank National Trust Co. v. Castellanos,* 15 Misc.3d 1134A, 841 N.Y.S.2d 819 (May 11, 2007) ("What is clear to this Court is that Deutsche Bank assigned the mortgage during the pendency of this application, but neglected to move to amend the caption to reflect the assignment or discontinue the foreclosure action...Plaintiff Deutsche Bank lacks standing to proceed with this action since January 19, 2007."), application for foreclosure again denied for lack of standing in *Deutsche Bank National Trust Co. v. Castellanos,* 18 Misc.3d 1115A, 856 N.Y.S.2d 497 (2008) (Schack, J.);. *See also Deutsche Bank National Trust Co. v. Steele,* No. 2:07-cv-886, 2008 U.S.Dist. LEXIS 4937 (S.D. Ohio Jan. 8, 2008)

To curb such abuses, §1692g(a)(2) requires formal identification of the principal on whose behalf the debt collection efforts are being conducted.   If this is not the original payee of the note, the consumer may demand proof that the creditor is, in fact, the holder of the obligation.  This is evident from §1692g(a)(5), which requires a "statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

**C.** **The distinction between creditors and servicers is important**

The rights of a consumer against the creditor are not the same as his rights against an assignee.  For example, the Truth in Lending Act, 15 U.S.C §1641, allows the assertion of many claims against assignees, but expressly excludes servicers from liability.  15 U.S.C. §1641(f) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.").

**D.** **Defendants' arguments lack merit**

Defendants argue that §1692g merely requires identification of the person to whom the debtor is to make payments, which can be a servicer or other collection agent.  This reading is nonsensical, because under the laws of many states, including New York, a collection attorney has a lien on the proceeds of any claim and may legally insist that payment be made to him.  N.Y. Judiciary Law, §475.  A collection lawyer is not "the creditor to whom the debt is owed".  Furthermore, the debt collector is already required to state "the true name of the debt collector's business, company, or organization" by 15 U.S.C. §1692e(14), so §1692g(a)(2) must require disclosure of someone else.  That "someone" is the owner of the debt, and the obvious purpose of §§1692g(a)(2) and 1692g(a)(5) is to permit the debtor to obtain assurance that the person demanding payment is, in fact, authorized by the owner of the obligation to collect it.

In this case, the owner of the debt is Deutsche Bank National Trust Company as trustee for Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2006-W3.   It is not AHMSI.  Moss Codilis failed to identify the owner of the debt, and thus violated the FDCPA.

Defendants' reliance on *CWCapital Asset Mgmt. LLC v. Chicago Properties, LLC*, 610 F.3d 197 (7th Cir. 2010) is misplaced.  There, in a non-FDCPA commercial foreclosure case arising under Illinois state law, the Court held that the mortgage servicer had standing to sue because it had a personal stake in the outcome of the lawsuit.  Furhermore, the trustee submitted

a timely affidavit ratifying the servicer's suit on its behalf.

   Illinois law specifically provides that a servicer or similar agent can sue to foreclose a mortgage.  735 ILCS 5/15-1504(3)(N).  However, the documents giving it authority must be shown of record.  *Bayview Loan Servicing, LLC v. Nelson*, 890 N.E.2d 940, 382 Ill. App. 3d 1184 (5th Dist. 2008).  *CWCapital* thus, does not stand for the proposition that a servicing agent can sue without identifying its principal and showing its  authority to sue.  Illinois law specifically requires disclosure of the principal.  More importantly, *CWCapital* does not negate the requirement of §1692g that the creditor of the alleged debt be disclosed to the consumer.

   In New York, the cases are divided on whether a servicing agent can sue to foreclose a mortgage.  Numerous cases in New York have been dismissed for failure to prove ownership of the alleged debt.  *HSBC Bank USA, NA v. Vasquez*, 2009 NY Slip Op 51814U (N.Y. Sup. Ct. 2009); *United States Bank Natl. Assn. v. White*, 2009 NY Slip Op 501100U (N.Y. Sup. Ct. 2009); *Wells Fargo Bank, N.A. v. Farmer*, 2008 NY Slip Op 51133U (N.Y. Sup. Ct. 2008); *U.S. Bank Natl. Assn. v. Bernard*, 2008 NY Slip Op 50247U (N.Y. Sup. Ct. 2008); *GE Capital Mtge. Servs., Inc. v. Powell*, 2007 NY Slip Op 27463 (N.Y. Sup. Ct. 2007); *Deutsche Bank Natl. Trust Co. v. Clouden*, 2007 NY Slip Op. 51767U (N.Y. Sup. Ct. 2007).  Even where courts did allow the servicing agent to sue, the mortgage owner was identified and proof of authority to sue on the owner's behalf was clear.  *Fairbanks v. Nagel*, 289 A.D.2d 99, 735 N.Y.S.2d 13 (1st Dep't 2001).

   Defendants' reliance on *Glazer v. Chase Home Finance, LLC*, 2009 U.S. Dist. LEXIS 126369 (N.D. Ohio Jan. 21, 2010) for the proposition that AHMSI is treated as a "creditor" because it was the servicer of the loan, is also misplaced.  In *Glazer*, Chase was the servicer of the loan *prior to default*.  Because of this, the Court treated Chase as a "creditor" and not subject to the FDCPA.  "Where a debt was assigned for servicing before default of the loan, the assignee is exempt from the [FDCPA] because the assignee becomes a creditor and is

8

collecting its own debt." *Martin v. Select Portfolio Servicing Holding Corp.*, 2008 U.S.Dist.

LEXIS 16088 (S.D. Ohio 2008); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir.

2003).  However, a person that begins servicing a loan <u>after</u> default and attempts to collect

payment is subject to the FDCPA.  *Gburek v. Litton Loan Servicing LP*, No. 08-3776, 2010 U.S.

App. LEXIS 15346 (7th Cir. July 27, 2010).

## II.   THE LIABILITY OF AHMSI IS NOT LIMITED TO 1% OF MOSS CODILIS' NET WORTH

It is well established that there is vicarious liability under the FDCPA, as long as

both the agent and principal meet the definition of "debt collector".    *Fox v. Citicorp Credit*

*Servs., Inc.*, 15 F.3d 1507, 1516  (9th Cir. 1994); *Martinez v. Albuquerque Collection Servs.*, 867

F. Supp. 1495, 1502 (D.N.M. 1994); *Kimber v. Federal Fin. Corp.*, 668 F. Supp. 1480, 1486

(M.D.Ala. 1987); *Ditty v. Check Rite, Ltd.*, 973 F.Supp. 1320 (D.Utah 1997); *Jones v. Wolpoff &*

*Abramson, L.L.P.*, 05-5774, 2006 U.S. Dist. LEXIS 4031 (E.D.Pa., February 1, 2006). *See also*

*Alger v. Ganick, O'Brien & Sarin* 35 F.Supp. 2d 148 (D. Mass. 1999); *Farber v. NP Funding II*

*L.P.*, CV-96-4322 (CPS), 1997 U.S. Dist. LEXIS 21245, 1997 WL 913335 at *2-3 & n.4

(E.D.N.Y. Dec. 9, 1997).   "[N]umerous courts utilize agency principles to make a principal

vicariously liable for the acts of his authorized or apparent agent under the FDCPA".  *Alger v.*

*Ganick, O'Brien & Sarin*, 35 F.Supp. 2d 148, 153 (D.Mass. 1999); accord, *Pettit v. Retrieval*

*Masters*, 211 F.3d 1057,  1059 (7th Cir. 2000).[2]

---

[2]  *See also Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000);
*Mizrahi v. Network Recovery Services, Inc.*, 98-CV-4528, 1999 U.S. Dist. LEXIS 22145, 1999
WL 33127737 (E.D.N.Y. Nov. 5, 1999)("debt collectors employing attorneys or other agents to
carry out debt collection practices that violate the FDCPA  are vicariously liable for their agent's
conduct."); *Flamm v. Sarner & Associates*, 02-4302, 2002 WL 31618443 (E.D.Pa., Nov. 6,
2002); *Farber v. NP Funding II L.P.*, CV-96-4322 (CPS), 1997 U.S. Dist. LEXIS 21245, 1997
WL 913335 *2-3 & n.4 (E.D.N.Y. Dec. 9, 1997); *Piper v. Portnoff Law Associates*, 274
F.Supp.2d 681, 689 (E.D.Pa. 2003); *Havens-Tobias v. Eagle*, 127 F.Supp.2d 889, 898 (S.D.Ohio
2001); *Campion v. Credit Bureau Services*, CS-99-0199-EFS, 2000 WL 33255504 (E.D.Wash.
Sept. 20, 2000); *In re Hart*, 246 B.R. 709, 731 (Bankr. D.Mass. 2000);  *Caron v. Charles E.*
*Maxwell, P.C.*, 48 F.Supp.2d 932, 935 (D.Ariz. 1999) ("courts have held that the client of an
attorney working as a "debt collector" as defined in § 1692a(6) of the FDCPA is only liable for
his attorney's violations if both the attorney and the client are debt collectors within the meaning
of the statute");   *Randle v. GC Services, L.P.*, 25 F. Supp.2d 849, 851 (N.D.Ill. 1998); *Taylor v.*

In this case, AHMSI became involved with the debt after default, and is thus a debt collector.  It hired another debt collector, Moss Codilis, to send an initial demand letter.  The initial demand letter was required to identify the owner of the debt, i.e., the principal of both AHMSI and Moss Codilis.  It did not.  Both AHMSI and Moss Codilis are liable for this omission.

Section 1692k(a)(2)(B) provides for statutory damages equal to "in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $ 500,000 or 1 per centum of the net worth of <u>the debt collector</u> . . ."  Within that range, "In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors– . . . "(2) in any class action under subsection (a)(2)(B), the frequency and persistence of noncompliance by <u>the debt collector</u>, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which <u>the debt collector's</u> noncompliance was intentional."  15 U.S.C. §1692k(b) (emphasis added).

Defendants contend that in a case of vicarious liability, this means that the principal debt collector's liability is limited to 1% of the agent debt collector's net worth.  Plaintiffs contend that vicarious liability means that the acts of the agent are imputed to the principal, but that the 1% is a personal protection afforded to "the debt collector," meaning the particular debt collector defendant.

---

*CheckRite, Ltd*, 627 F. Supp. 415, 416-417 (S.D. Ohio 1986); *West v. Costen*, 558 F. Supp. 564, 573 & n.2 (W.D.Va. 1983)*; Martinez v. Albuquerque Collection Servs.*, 867 F. Supp. 1495, 1502 (D.N.M. 1994) ("debt collectors employing attorneys or other agents to carry out debt collection practices that violate the FDCPA are vicariously liable for their agent's conduct"); *First Interstate Bank of Fort Collins v. Soucie*, 924 P.2d 1200, 1202 (Colo. Ct. App. 1996) ("Federal courts that have considered the issue have held that the client of an attorney who is a 'debt collector,' as defined in § 1692a(6), is vicariously liable for the attorney's misconduct if the client is itself a debt collector as defined in the statute. Thus, vicarious liability under the FDCPA will be imposed for an attorney's violations of the FDCPA if both the attorney and the client are debt collectors as defined in § 1692a(6).").

10

Initially, the abstract question posed by defendants is not appropriately decided at this point.  Defendants do not dispute that vicarious liability exists; i.e., if the complaint states a claim against Moss Codilis, it states a claim against AHMSI.   Even if plaintiffs are correct that damages are to be determined separately for each defendant, the culpability of AHMSI is an important consideration, and the facts relating to such culpability have not been developed.  For this reason, other courts have declined to issue the sort of advisory opinion requested by defendants.  *Seawell v. Universal Fidelity Corp.*, 05-479, 2007 U.S.Dist. LEXIS 25163, *6 (E.D.Pa., April 4, 2007) ("In the instant case, no such finding of liability has been made, thereby rendering any determination of statutory damages at this stage purely speculative").

If the Court decides to address the issue, defendants are plainly wrong.  The purpose of the 1% limitation is to protect the particular debt collector against overwhelming liability.  As explained in *Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000):

> [A] statute must be interpreted in accordance with its object and policy. . . . Here, the net worth clause is designed to address a problem often associated with fixed monetary penalties: they sometimes penalize smaller companies too harshly but are also insufficiently punitive for larger businesses. . . . Thus, by making the extent of the penalty directly proportional to a percentage of the defendant's net worth, Congress hoped that punishment might be meted out according to a business's ability to absorb the penalty. . . . The key aspect of this net worth provision is not its punitive nature, as Sanders argues, but a recognition that an award of statutory punitive damages may exceed a company's ability to pay and thereby force it into bankruptcy. . . . Thus, we agree with the Fifth Circuit that the primary purpose of the net worth provision is a protective one. It ensures that defendants are not forced to liquidate their companies in order to satisfy an award of punitive damages. Boggs v. Alto Trailer Sales, Inc., 511 F.2d 114, 118 (5th Cir. 1975) (identical provision in TILA was designed to protect businesses from catastrophic damage awards).

Accord, *Armamburu v. Healthcare Financial Services, Inc.*, CV 2002-6535 (ARR) (MDG), 2007 U.S. Dist. LEXIS 49039, *16 (E.D.N.Y. July 6, 2007); *Stolicker v. Muller, Muller, Richmond, Harms, Myers and Sgroi, P.C.*, 1:04-CV-733, 2006 U.S. Dist. LEXIS 36000, *6-7 (W.D.Mich., June 2, 2006); *Barkouras v. Hecker*, 06-0366 (AET), 2006 U.S. Dist. LEXIS 88998, *9 (D.N.J. December 8, 2006) ("Congress intended the damages provision of 15 U.S.C. § 1692k(a)(2), limiting class action damages to one per centum of net worth, as a protection for small businesses

11

from falling into bankruptcy for FDCPA violations").

        The only way §1692k can fulfill this purpose is if the 1% is measured against the particular debt collector's net worth.   While in this case Moss Codilis has a smaller net worth than AHMSI, this is purely serendipitous.  It is entirely possible that the agent debt collector has a larger net worth than the principal debt collector.  Some debt collectors are large entities, sometimes even publicly held. *See* Form 10-K filed by Encore Capital Group, Inc. with the SEC for the year ending December 31, 2009 (relevant portions attached hereto as Appendix A); Form 10-K filed by NCO Group, Inc. with the SEC for the year ending December 31, 2009 (relevant portions attached hereto as Appendix B); Form 10-K filed by SLM Corp. with the SEC for the year ending December 31, 2009 (relevant portions attached hereto as Appendix C).  They frequently collect for modest-sized entities that have invested in charged-off debts. For example, Arrow (owned by SLM) collects for small trusts such as DAG.  (Appendix D, printout of recent filings by DAG in Cook County Illinois).

        In such a case, holding the principal debt collector for 1% of the net worth of the agent could wipe it out.  For example, 1% of the net worth of NCO or Arrow is $500,000.  If a small company that invests in buying bad debts hires NCO to collect for it, defendants' theory would expose it to $500,000 damages even though its net worth is $500,000 or less.  Clearly, this is not a rational reading of §1692k.

        Moreover, limiting the principal debt collector's liability to 1% of the agent's net worth encourages owners of charged-off debt to hire small, thinly-capitalized companies to collect for them.  Such companies are more likely to engage in abusive practices than substantial, well-established companies who have investors to answer to.  *Repairing a Broken System, Protecting Consumers in Debt Collection Litigation and Arbitration*, Federal Trade Commission, July 2010, p. 27 (available at: http://www.ftc.gov/os/2010/07/debtcollectionreport.pdf); *Attorney General Cuomo Secures $275 in Restitution for Victims of A New York Debt Collection Operation That Used Illegal Scare Tactics to Threaten Consumers*, New York Attorney General

Media, February 9, 2010; *Attorney General Cuomo Settles With Buffalo Debt Collection Company That Harassed and Intimidated Consumers*, New York Attorney General Media, July 27, 2010; *Attorney General Cuomo Sues WNY Debt Collection Companies That Harassed and Threatened Consumers Nationwide,* New York Attorney General Media, June 1, 2010 (articles available at: http://www.ag.ny.gov/media_center/media_center.html).  A construction of the FDCPA that creates a perverse incentive to hire financially-irresponsible debt collectors makes no sense.

        Indeed, since "the debt collector" referenced in the "one percent clause" is the same "debt collector" referred to in 15 U.S.C. §1692k(b), defendants' argument means that the principal debt collector would not be assessed damages based on its "frequency and persistence of noncompliance" and intent, but on that of the agent debt collector.  Again, this makes no sense.  If the principal debt collector's liability is indeed entirely vicarious and it made diligent efforts to hire only responsible agents, it should be entitled to argue this in mitigation.  On the other hand, a debt owner that intentionally sought to hire vicious agents should be assessed the full 1%.  However, on defendant's reading of "the debt collector," only the conduct of the agent is relevant.

        The list of factors in §1692k(b) include the culpability and resources of "the debt collector," suggesting that punitive damages may furnish an appropriate analogy.  Under federal law, where multiple defendants are liable for punitive damages, the damages are assessed separately against each defendant based on its resources and conduct.  *McFadden v. Sanchez*, 710 F.2d 907, 914 (2d Cir. 1983) ("punitive damages must be individually assessed in suits under section 1983"); *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) (same); *CEH, Inc. v. F/V Seafarer* (ON 675048), 70 F.3d 694, 706 (1st Cir. 1995) (federal maritime law; court upheld awards of $10,000 punitive damages against captain who wilfully destroyed lobster traps and $50,000 against shipowner who failed to provide any supervision over captain).

        Defendants cite no authority whatever supporting their position, and it does not

make sense.  Defendants are attempting to capitalize on the fortuitous fact that in this case Moss Codilis has a smaller net worth than AHMSI, and urge the adoption of a rule of law that, consistently applied, would frequently defeat the obvious protective purpose of §1692k.

## III.      CONCLUSION

For the reasons stated, Defendants' motion to dismiss should be denied.

Respectfully submitted,


  /s/Daniel A. Edelman
Daniel A. Edelman


Abraham Kleinman
KLEINMAN LLC
626 RXR Plaza
Uniondale, NY 11556-0626
(516) 522-2621
(888) 522-1692 (fax)
akleinman@kleinmanllc.com


Cathleen M. Combs (PHV)
Daniel A. Edelman  (PHV)
EDELMAN COMBS LATTURNER &
      GOODWIN, LLC
120 S. LaSalle Street
Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 fax
ccombs@edcombs.com


14

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on September 10, 2010, I filed the foregoing via the Court's ECF system, which will send notice to the following:

Thomas K. Richards
trichards@leaderberkon.com

Glen Silverstein
gsilverstein@leaderberkon.com

David J. Chizewer
David.Chizewer@goldbergkohn.com

 /s/Daniel A. Edelman
Daniel A. Edelman

Cathleen M. Combs (PHV)
Daniel A. Edelman  (PHV)
EDELMAN COMBS LATTURNER &
        GOODWIN, LLC
120 S. LaSalle Street
Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 fax
ccombs@edcombs.com
T:\24264\Pleading\Plaintiff's Response to Def MTD 9-9-10_.wpd

15